UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA RODRIGUEZ,

      Plaintiff,

v.

DTE ENERGY, a Michigan corporation,
and DTE Energy Corporate Services,
LLC, a Michigan corporation, jointly
and severally,

      Defendants,

Case No. 2:24-cv-11120-LJM-EAS
Hon. Laurie J. Michelson
Magistrate Judge Elizabeth Stafford

---

PITT MCGEHEE PALMER BONANNI &
RIVERS, P.C.
Cary S. McGehee (P42318)
Danielle Y. Canepa (P82237)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
cmcgehee@pittlawpc.com
dcanepa@pittlawpc.com

Miller Canfield Paddock & Stone
PLC
Jennifer L. Sabourin (P55720)
Sydney G. Rohlicek (P85655)
Attorneys for Defendant
150 W. Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420
sabourin@millercanfield.com
rohlicek@millercanfield.com

---

## **PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND**

      Plaintiff, Angela Rodriguez, by and through her attorneys, Pitt McGehee

Palmer Bonanni & Rivers P.C., file the following First Amended Complaint and

Jury Demand against DTE Energy and DTE Energy Corporate Services, LLC,

(collectedly referred to as DTE), and state as follows:

## INTRODUCTORY STATEMENT

Plaintiff Angela Rodriguez worked as a Customer Resolution Specialist II (CSR) in DTE's Customer Service Department. As a DTE CSR, Ms. Rodriguez answered customer calls routed to her.  During her employment with DTE, Ms. Rodriguez endured repeated egregious incidents of sexual harassment committed by a DTE customer. The sexual harassment included the customer masturbating on the phone and making lewd remarks to her. Ms. Rodriguez immediately reported the first incident to her supervisor who had access to the audio recording of the call. The supervisor told her that she was aware of this customer by name and that he had sexually harassed other female CSRs. Nevertheless, she told Ms. Rodriguez that if he called again, she was required per DTE policy to stay on the call and not hangup. She also lied to Ms. Rodriguez and told her that she was escalating her complaint to Corporate Security although she did not. Instead of immediately escalating Ms. Rodriguez's complaint, investigating it, and taking appropriate remedial action to stop it from happening again, DTE did nothing. DTE was more concerned about call volumes and times and revenue than the health and safety of its CSRs. Thereafter, Ms. Rodriguez was routed multiple calls from the same customer who continued his same lewd behavior, including masturbating on the call, while she was forced to listen until he decided to end the call. Ms. Rodriguez reported each incident to DTE to no avail. As a result, Ms. Rodriguez was sexually harassed again and again by the

same customer for over a course of almost a year without any investigation or intervention by DTE. DTE continued to direct Ms. Rodriguez to stay on the call with the customer, who had an outstanding balance that DTE wanted him to pay. On February 10, 2023, after enduring nearly a year of sexual harassment, coupled with the fear and anxiety of anticipating further harassment every day and her employer's indifference to the abuse, Ms. Rodriguez commenced a medical leave of absence from DTE due to psychological disability. On September 12, 2023, DTE terminated Ms. Rodriguez's employment because of her continuing disability.

DTE deliberately maintained policies that subjected female CSRs to ongoing sexual harassment, which served no legitimate business purpose. In doing so, DTE intentionally breached its legal duty to protect Ms. Rodriguez and other female CSRs from known sexual harassment and prevent a sexually hostile work environment. As a result of DTE's violation of her civil rights, Ms. Rodriguez has and continues to suffer severe psychological trauma and significant past and future economic and emotional damages.

## **Jurisdiction and Venue**

1.      This Court has subject matter jurisdiction over Ms. Rodriguez's federal claims pursuant to 28 USC §1331 to enforce the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

2.     The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as those claims arise out of the same facts as the federal claims and all claims are part of the same case or controversy.

3.     The events giving rise to this action occurred in Wayne County, Michigan.

4.     Venue is proper in the Eastern District of Michigan because the events giving rise to this cause of action occurred in this district and all parties reside and/or operate within this judicial district.

5.     On June 14, 2023, Ms. Rodriguez filed a Charge of Discrimination/Harassment with the Equal Employment Opportunity Commission.

6.     On January 29, 2024, the EEOC issued a Right to Sue letter for Rodriguez's claims under Title VII of the Civil Rights Act.

7.     Plaintiff has timely filed her claims for violations under Title VII.

## **The Parties**

8.     Plaintiff Angela Rodriguez is a citizen of the United States and resides in   the Eastern District of Michigan.

9.     DTE Energy Corporate Services, LLC, is a Michigan corporation doing business in the Eastern District of Michigan.

10.    DTE Energy is a Michigan Corporation and is the parent holding company for Defendant DTE Energy Corporate Services, LLC., and is a diversified

energy and private utility company doing business in the Eastern District of Michigan.

## Statement of Facts

11.    On September 27, 2021, DTE Defendants (hereinafter referred to as DTE) hired Ms. Rodriguez as a Customer Service Resolution Specialist I ("CSR") within DTE's Customer Service Department. She was assigned to the Detroit office with a fully remote schedule. She worked from home full-time.

12.    After a year of service, DTE promoted Ms. Rodriguez to Customer Resolution Specialist II.

13.    A CSR's primary function is to answer customer phone calls and resolve customer inquiries related to billing, turning on and turning off services, electrical and gas outages, and gas leaks.

14.    The Call Center randomly assigns callers to CSRs.

15.    No CSR has a direct line.

16.    The CSR identifies themselves by name to the caller when answering each call.

17.    During her employment with DTE, Ms. Rodriguez had an excellent performance record. She received a number of awards for her performance, including two "Everyday Hero Awards" for excellent customer service.

18.    DTE has a duty under Title VII to take prompt and appropriate corrective action when it becomes aware of discriminatory conduct and sexual harassment committed by a customer. *See* 29 CFR § 1604.11(e); *Moore v. Countryside Care Ctr., Inc.*, No. 2:13-CV-15254, 2014 WL 4110760, at *3 (E.D. Mich. Aug. 19, 2014); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073–74 (10th Cir. 1998).

19.    During Ms. Rodriguez's employment with DTE, she was subjected to repeated and outrageous incidents of sexual harassment by a DTE customer ("Customer X").

20.    Ms. Rodriguez reported these incidents of sexual harassment to DTE, but the company failed to promptly investigate her complaints or take appropriate remedial action to stop future harassment.

21.    Indeed, DTE's business practices and procedures which prioritize its concern about production over the health and welfare of its employees, have fostered the creation and perpetuation of a sexually hostile work environment for Ms. Rodriguez, and other female DTE employees.

22.    At all times relevant hereto DTE was aware of Customer X's name, alias(es), phone numbers, social security number, and date of birth.

23.   At all times relevant hereto, DTE maintained audio recordings of customer calls and had access to these recordings at the time that Ms. Rodriguez reported Customer X's sexual harassment.

24.   Customer X sexually harassed multiple female CSRs at DTE before and after Ms. Rodriguez received her first sexually harassing call from Customer X.

25.   At all times during Ms. Rodriguez's active employment with the company, DTE maintained a policy and practice which required CSRs to remain on the phone with callers/customers no matter how abusive or harassing that caller/customer behaved.

26.   Specifically, DTE maintained a policy and practice that CSRs are required to endure sexual harassment from callers or risk endangering their performance metrics, compensation, and employment status with the company.

27.   If a CSR hung up or transferred a caller to a supervisor, it would impact the CSR's performance rating, bonus entitlement, and possibly their continued employment with DTE.

28.   Customer X sexually harassed Ms. Rodriguez beginning on April 7, 2022, and continuing until January 28, 2023.

29.   The sexual harassment included, but was not limited to, Customer X:

a) Telling Ms. Rodriguez that he was naked and asking her if she liked that;

b) Asking Ms. Rodriguez what she was wearing;

c)  Telling Ms. Rodriguez that her voice was sexy;

d)  Breathing quickly and making the unmistakable sounds of masturbation;

e)  Calling Ms. Rodriguez by her first name while he masturbated; and

f)  Saying, "It's coming."

30.    Following each incident of sexual harassment, Ms. Rodriguez immediately reported the incident to her supervisors.

31.    Notwithstanding her complaints, DTE failed to promptly investigate and remediate the situation and, consequently, the sexual harassment continued.

32.    Not only did DTE fail to take remedial action, DTE affirmatively required Ms. Rodriguez to endure repeated sexual harassment.

**<u>Incident Number 1</u>**

33.    On April 7, 2022, Ms. Rodriguez answered a call from Customer X who proceeded to masturbate on the phone and make sexually inappropriate comments to her while Ms. Rodriguez was forced to listen.

34.    Immediately after the call, Ms. Rodriguez reported the incident to her direct supervisor, Customer Care Supervisor, Keisha Leonard.

35.    Ms. Leonard told Mr. Rodriguez that she was familiar with Customer X and knew that he had previously called other female CSRs and sexually harassed them.

8

36.     Ms. Rodriguez suggested to Ms. Leonard that DTE block Customer X's number, but Ms. Leonard told her that pursuant to DTE policy, this was not an option.

37.     Ms. Rodriguez was told by her supervisors that Customer X's number could not be blocked because according to DTE policy, the customer might need to contact the company in an "emergency."

38.     Customer X's conduct clearly indicated that he was not in an emergency situation.

39.     DTE supervisors told Ms. Rodriguez this policy applied although her supervisors knew that Customer X's account was not active and that he only had an outstanding balance with DTE.

40.     Ms. Rodriguez asked if she could hang up on Customer X if he called again.

41.     Ms. Leonard said that hanging up on Customer X would also violate DTE policy.

42.     Ms. Leonard told Ms. Rodriguez that she was going to report Customer X's sexual misconduct to Corporate Security.

43.     Ms. Rodriguez was never contacted by Corporate Security regarding the April 2022 incident.

44.     Despite her assurances to Ms. Rodriguez, Ms. Leonard did not contact Corporate Security in response to her April 7, 2022, complaint.

45.     Per DTE policy, Ms. Leonard was required to escalate Ms. Rodriguez's complaint to her manager, human resources and/or Corporate Security, but she did not.

46.     DTE failed to take appropriate remedial action in response to Ms. Rodriguez's April 7, 2022, complaint.

## **Incident Number 2**

47.     One month later, on May 11, 2022, Ms. Rodriguez answered a second call from Customer X who again masturbated on the phone and made sexually inappropriate comments to Ms. Rodriguez while she was forced to listen.

48.     Ms. Rodriguez reported the incident immediately to Ms. Leonard.

49.      Ms. Rodriguez again asked if she could end the call if Customer X called again.

50.      Ms. Leonard again rejected her request, citing DTE policy.

51.     Ms. Rodriguez emphasized to Ms. Leonard that she was emotionally shaken by the repeated incidents of sexual harassment and that DTE's failure to stop it was affecting the terms and conditions of her employment.

52.     Ms. Leonard again told Ms. Rodriguez that she would contact Corporate Security.

53.     Ms. Leonard did not contact Corporate Security in response to Ms. Rodriguez's May 11, 2022, complaint.

54.     DTE failed to take appropriate remedial action in response to Ms. Rodriguez's May 11, 2022, complaint.

## **Incident Number 3**

55.     On Saturday, January 28, 2023, Ms. Rodriguez answered a third call from Customer X who again masturbated on the phone and made sexually inappropriate comments to Ms. Rodriguez while she was forced to listen.

56.     After this third incident, Ms. Rodriguez experienced severe anxiety and distress and felt it necessary to place herself on a break in order to deal with the emotional impact of the call.

57.     DTE recorded this break time and refused to waive it from her performance metrics, even after Ms. Rodriguez explained the situation to Ms. Leonard and requested that it not be counted against her.

58.     Ms. Rodriguez immediately reported this third incident to Ms. Leonard by text message and by Teams.

59.     Ms. Rodriguez also escalated the incidents of sexual harassment to Analyst, Demonica Jackson, and asked if it was possible to block Customer X's number.

60.     Ms. Jackson told Ms. Rodriguez that pursuant to DTE policy, blocking his calls was not permitted and offered no other suggested remedial action or assistance.

61.     On Wednesday, February 1, 2023, Ms. Rodriguez met with Ms. Leonard and DTE Principal Supervisor, Customer Care, Brianne Kimbrough, to discuss the incidents of sexual harassment.

62.     Ms. Leonard and Ms. Kimbrough repeated DTE's policy that the company could not block Customer X's numbers. They offered no assistance and no proposed solutions.

63.     During Ms. Rodriguez's meeting with Leonard and Kimbrough, she expressed that since she had received three calls from Customer X in an eight-month period and the calls were randomly routed, it seemed obvious that Customer X was making a high volume of calls to the Call Center and subjecting other female CSRs to sexual harassment.

64.     Ms. Rodriguez reported to Ms. Leonard and Ms. Kimbrough that she had spoken with two other female CSRs who had also been subjected to sexual harassment by Customer X.

65.     Ms. Leonard and Ms. Kimbrough acknowledged that immediately after Customer X ended his call with Ms. Rodriguez on January 28th, he called back and sexually harassed the next female CSR who answered his call.

66.     Ms. Rodriguez again requested permission to hang up on Customer X if he called again.

67.     Her request was again rejected although both Ms. Leonard and Ms. Kimbrough knew that Customer X was not only sexually harassing Ms. Rodriguez but also other female CSRs.

68.     Once again, DTE took no action to remediate Ms. Rodriguez's complaints of a sexually hostile work environment.

69.     Due to DTE's failure to promptly investigate and remediate the ongoing sexual harassment by Customer X, Ms. Rodriguez's fear that she would receive another sexually harassing call from Customer X, and DTE's obvious concern about productivity over the health and welfare of its employees, Ms. Rodriguez began to suffer severe psychological symptoms, including emotional distress, and fear and anxiety each time she reported to work at DTE.

70.     Each day Ms. Rodriguez reported to work, she anticipated that she would again be forced to listen to sexually offensive comments and masturbation, and if she hung up on the call, face negative performance metrics, potential disciplinary action, and possible termination from DTE.

71.     On February 10, 2023, Ms. Rodriguez began a psychiatric disability leave of absence due to the intolerable working conditions of the sexually hostile

work environment created by Customer X, and DTE's failure to promptly and appropriately investigate and stop the sexual harassment.

72.     On September 12, 2023, DTE terminated Ms. Rodriguez's employment because she was unable to return to work due to psychological disability caused by DTE's violation of her civil rights.

73.     DTE took no further action to investigate or intervene to stop the sexual harassment by Customer X until DTE received notice that Ms. Rodriguez had retained an attorney.

74.     At the time of her termination, Ms. Rodriguez was earning a base salary of $19.99 per hour for 40 hours per week, along with other valuable benefits of employment, including bonus compensation and medical benefits.

75.     DTE's deliberate failure to adopt a policy to handle sexually abusive callers, despite actual and constructive notice that female CSRs would be subject to sexual and other forms of illicit harassment, constituted a policy of acceptance of sexual harassment of CSRs.

76.     DTE is a massive company with over $12 billion in operating revenues and an experienced human resources department.

77.     DTE's multiple failures are outrageous and each indicates intentional conduct that establishes such reckless indifference to Ms. Rodriguez's federally protected rights that punitive damages are in order, including and not limited to:

DTE's failure to adopt basic procedures to manage abusive callers; DTE's failure to prevent, promptly investigate and remediate the sexually hostile work environment that existed for Ms. Rodriguez and other female CSRs; DTE's lies to Ms. Rodriguez about investigating the sexual harassment; and DTE's instruction that she must subject herself to sexual harassment and abuse.

78.     As a direct and proximate result of DTE's discriminatory treatment and termination of Ms. Rodriguez, she has suffered losses including and not limited to: loss of career opportunities, loss of self-esteem, loss of wages and other valuable compensation, medical costs, emotional distress, pain, and suffering.

**COUNT I**
**SEXUALLY HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF TITLE VII**
**(PLAINTIFF V. DEFENDANTS)**

79.     Ms. Rodriguez incorporates the above allegations as if stated in full herein.

80.     Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating in the terms and conditions of employment on the basis of sex or gender, including discrimination through a sexually hostile work environment. 42 U.S.C. 2000e et seq.

81.     At all relevant times, Plaintiff was an employee and Defendants were employers within the meaning of 42 USC §2000e.

82.     DTE has a duty under Title VII to take prompt and appropriate corrective action where it becomes aware of discriminatory and sexual harassment committed by a customer. *See* 29 CFR § 1604.11(e); *Moore v. Countryside Care Ctr., Inc*., No. 2:13-CV-15254, 2014 WL 4110760, at *3 (E.D. Mich. Aug. 19, 2014); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073–74 (10th Cir. 1998).

83.     Notwithstanding those duties, DTE violated Title VII by knowingly subjecting Ms. Rodriguez to a severe, pervasive, offensive, and hostile environment caused by pervasive sexual harassment, resulting in psychiatric disability and her termination of employment.

84.     Ms. Rodriguez was subjected to the ongoing sexual harassment because of her sex.

85.     The acts of sexual harassment to which Plaintiff was subjected were severe and pervasive and created a hostile, intimidating and offensive work environment that materially altered the terms and conditions of Plaintiff's employment.

86.     Plaintiff repeatedly complained to DTE supervisors that Customer X's communication was unwelcome and extremely disturbing, yet DTE failed to promptly investigate her complaints or take appropriate remedial action to stop the harassment and as a result Plaintiff continued to subject Customer X's sexual

harassment creating a sexually hostile work environment for Plaintiff leading to her psychiatric disability and termination of employment.

87.    DTE had actual and/or constructive notice of Customer X's sexual harassment of CSRs, including Ms. Rodriguez, but failed to take prompt and adequate remedial action in response and, as a result, the harassment continued and created a sexually hostile work environment for Ms. Rodriguez.

88.    These unlawful employment practices were committed with malice or reckless indifference to the federally protected rights of Ms. Rodriguez.

89.    As a result, Ms. Rodriguez has suffered damages and injuries as alleged above.

## <u>COUNT II</u>
## SEXUALLY HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## THE MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT
## (PLAINTIFF V. DEFENDANTS)

90.    Ms. Rodriguez incorporates the above allegations as if stated in full herein.

91.    Michigan's Elliott-Larsen Civil Rights Act (ELCRA) prohibits employers from discriminating in the terms and conditions of employment on the basis of sex or gender, including discrimination through a sexually hostile work environment. MCL § 37.2202(1).

92.     At all relevant times, Plaintiff was an employee and Defendants were employers within the meaning of MCL § 37.2201.

93.     DTE has a duty under ELCRA to take prompt and appropriate corrective action where it becomes aware of discriminatory and sexual harassment committed by a customer.

94.     Notwithstanding those duties, DTE violated ELCRA by knowingly subjecting Ms. Rodriguez to a severe, pervasive, offensive, and hostile environment caused by pervasive sexual harassment, resulting in psychiatric disability and her termination of employment.

95.     Ms. Rodriguez was subjected to the ongoing sexual harassment because of her sex.

96.     The acts of sexual harassment to which Plaintiff was subjected were severe and pervasive and created a hostile, intimidating and offensive work environment that materially altered the terms and conditions of Plaintiff's employment.

97.     Plaintiff repeatedly complained to DTE supervisors that Customer X's communication was unwelcome and extremely disturbing, yet DTE failed to promptly investigate her complaints or take appropriate remedial action to stop the harassment and as a result Plaintiff continued to subject Customer X's sexual

harassment creating a sexually hostile work environment for Plaintiff leading to her psychiatric disability and termination of employment.

98.    DTE had actual and/or constructive notice of Customer X's sexual harassment of CSRs, including Ms. Rodriguez, but failed to take prompt and adequate remedial action in response and, as a result, the harassment continued and created a sexually hostile work environment for Ms. Rodriguez.

99.    These unlawful employment practices were committed with malice or reckless indifference to the federally protected rights of Ms. Rodriguez.

100.    As a result, Ms. Rodriguez has suffered damages and injuries as alleged above.

## **Request for Relief**

101.    For the reasons set forth above, Plaintiff's civil rights were violated by Defendants, and she suffered damages and injuries as alleged above.  Accordingly, Plaintiff requests the following relief:

> a. An order reinstating Plaintiff to a position with DTE substantially similar in status and pay to the position she held at the time of her termination while accommodating her psychological limitations caused by Defendants illegal actions alleged herein;
>
> b. An order awarding her all compensatory damages, including economic and emotional damages, past and future, in an amount she is found to be entitled to;
>
> c. An order awarding her all costs, interest, expenses, and attorney fees in an amount she is found to be entitled to;

d.  An order granting her all such other relief as the court deems just and
    equitable.

Respectfully submitted,

Pitt McGehee Palmer Bonanni & Rivers, P.C.

By:  *s/ Cary S. McGehee*
Cary S. McGehee (P42318)
Danielle Y. Canepa (P82237)
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
cmcgehee@pittlawpc.com
dcanepa@pittlawpc.com

Dated: June 25, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA RODRIGUEZ,

     Plaintiff,

v.

DTE ENERGY, a Michigan corporation,
and DTE Energy Corporate Services,
LLC, a Michigan corporation, jointly
and severally,

     Defendants,

Case No. 2:24-cv-11120-LJM-EAS
Hon. Laurie J. Michelson
Magistrate Judge Elizabeth Stafford

| | |
|---|---|
| Pitt McGehee Palmer Bonanni & Rivers, P.C.<br>Cary S. McGehee (P42318)<br>Danielle Y. Canepa (P82237)<br>Attorneys for Plaintiff<br>117 W. Fourth Street, Suite 200<br>Royal Oak, Michigan 48067<br>(248) 398-9800<br>cmcgehee@pittlawpc.com<br>dcanepa@pittlawpc.com | Miller Canfield Paddock & Stone PLC<br>Jennifer L. Sabourin (P55720)<br>Sydney G. Rohlicek (P85655)<br>Attorneys for Defendant<br>150 W. Jefferson, Suite 2500<br>Detroit, MI 48226<br>(313) 963-6420<br>sabourin@millercanfield.com<br>rohlicek@millercanfield.com |

## **DEMAND FOR JURY TRIAL**

     Plaintiff Angela Rodriguez demands a trial by jury of all issues within the causes

of action.

                      Respectfully submitted,

                      Pitt McGehee Palmer Bonanni & Rivers, P.C.

                      By:  *s/ Cary S. McGehee*

Cary S. McGehee (P42318)
Danielle Y. Canepa (P82237)
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
cmcgehee@pittlawpc.com
dcanepa@pittlawpc.com

Dated:  June 25, 2024