UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA RODRIGUEZ,

        Plaintiff,

v.

DTE ENERGY and DTE ENERGY
CORPORATE SERVICES LLC,

        Defendants.

Case No. 2:24-cv-11120

HONORABLE STEPHEN J. MURPHY, III

_____/

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT [47] AND OMNIBUS ORDER [48, 49, 54, 66, 68, 77, 81]**

Plaintiff Angela Rodriguez sued her former employer, DTE, for having a sexually hostile work environment in violation of Title VII and the Michigan Elliot-Larsen Civil Rights Act (ELCRA).[1] ECF No. 10. At the close of discovery, DTE moved for summary judgment and argued, in part, that the sexual harassment was not severe or pervasive enough to create a hostile work environment. ECF No. 47. For the reasons below, the Court agrees.

Rodriguez and others at DTE's call center endured telephonic sexual harassment from a man dubbed "Customer X." During her seventeen months at DTE, Rodriguez received two sexually harassing calls from Customer X and learned about three other calls that Customer X made to her coworkers. The five calls were sporadic, private, and non-physical. Considering the totality of the circumstances, no

---

[1] Rodriguez sued both DTE Energy and DTE Energy Corporate Services, LLC. For simplicity, the Court uses "DTE" to refer to both.

1

reasonable jury could find that the harassment was objectively severe or pervasive. Thus, the Court will grant the motion for summary judgment and, in doing so, dispose of several other pending motions.

## BACKGROUND

The Court starts with the relevant factual background before proceeding to the procedural background of the case.

I.    Factual Background

In September 2021, DTE hired Plaintiff, Angela Rodriguez, as a customer service resolution specialist. ECF No. 12, PageID.67. When she answered customer phone calls, Rodriguez fielded questions about billing, service, outages, and gas leaks. *Id.* at PageID.67–68. She worked at all times from home. *Id.* at PageID.67. Because DTE is a regulated utility, it must be "available at all times to receive and respond to customer contacts" regarding gas or electrical emergencies. Mich. Admin. Code R. 460.147(c).

DTE's call center randomly assigned customer calls to Rodriguez and others. ECF No. 12, PageID.68. According to DTE's call handling policy, it was not acceptable to hang up on "a customer call during a difficult or challenging interaction." ECF No. 55-4, PageID.1359 (emphasis omitted). Rather, employees were told, "[i]f the caller becomes belligerent and/or verbally abusive during the call, follow your existing team's escalation process." *Id.* (emphasis omitted). For Rodriguez, that would have been DTE's R900 Escalation Policy. *See* ECF No. 47-4. The Policy instructed employees to "make every attempt to escalate to a Leader in 'Real Time', while the

customer is on the line." *Id.* at PageID.764; *see also* ECF No. 47-5, PageID.769 (instructing employees to reach out to supervisors via "Teams, Phone Call, Text, etc."); ECF No. 47-6, PageID.772 (instructing employees to escalate calls with "inappropriate customers"). After contacting a supervisor, an employee could transfer the call to their supervisor. ECF No. 47-2, PageID.693. If a supervisor was unavailable, "[a]s a last resort," employees could "offer a call back" and tell the customer to expect a call from a supervisor "within 24 hours." ECF No. 47-4, PageID.764.

If Rodriguez ever needed to contact a supervisor during a call, she would put customers on hold. ECF No. 47-2, PageID.694. DTE advised its employees to ask permission from a customer before putting the customer on hold and telling the person why he or she was being put on hold. ECF No. 55-4, PageID.1361; *see also* ECF No. 55-27, PageID.1601–1602 (supervisor testifying that, if a customer refused to be put on hold, an employee could not put them on hold). Here, although Rodriguez testified that she could have put Customer X on hold and contacted her supervisor, she did not think about doing so in the middle of the calls. ECF No. 47-2, PageID.731–732. But Rodriguez did not follow DTE's procedures for escalating inappropriate calls, so the calls from Customer X were never transferred to a supervisor. *Id.* at PageID.719.

During her time at DTE, Rodriguez received three calls from Customer X—only two of which were sexually harassing. She also learned about three other calls from Customer X to her coworkers. After first explaining the three calls to Rodriguez

by Customer X, the Court will proceed to describe the other calls that Rodriguez learned about during her employment.

A.    *Calls to Rodriguez from Customer X*

i.    Call One – April 7, 2022

On April 7, 2022, Rodriguez randomly received a call from Customer X. He seemed to be an older man who wanted to make a utilities payment. Customer X told Rodriguez that he was naked. He asked what Rodriguez was wearing and said that she was sexy. He started breathing quickly, made "the unmistakable sounds of masturbation," and said, "it's coming." Customer X kept repeating Rodriguez's first name while masturbating. Rodriguez then took a $50 payment from him. ECF No. 55-25, PageID.1504–1505.

When the call ended, Rodriguez sent her supervisor, Keisha Leonard, a Microsoft Teams Message. Rodriguez said she was "extremely upset" after the call and asked if it was possible to flag Customer X's account. She continued, "this man definitely was up to something while on the phone and if you're able to pull the call I am sure you'll hear what I mean and agree." Rodriguez also noted how Customer X "went into your voice is sexy, what are you wearing before telling [her] he was naked and asking if [she] liked that." ECF No. 55-9, PageID.1397.

Leonard listened to the call and said that it matched exactly what Rodriguez had described in her Teams message. ECF No. 55-33, PageID.1791. But Leonard has also testified that it did not sound like Customer X was masturbating. ECF No. 55-33, PageID.1792. Nevertheless, on April 8, 2022, she emailed "OMG! the creeper is

4

back at it." ECF No. 66-6, PageID.2120. And she told Rodriguez that she was going to escalate the issue to Corporate Security. ECF No. 55-25, PageID.1508.

ii.     Call Two – May 11, 2022

On May 11, 2022, Rodriguez received a second call from Customer X. ECF No. 55-25, PageID.1515. He said that he wanted to pay a bill and provided information to try to locate his account. But his name did not match the name on the account. He asked for more time to find "papers." Because Rodriguez realized she was speaking with Customer X, she told him to make a payment or hang up. The call soon ended. Ex. S – Recording of May 11, 2022 Call.

In response to DTE's motion for summary judgment, Rodriguez's brief said that "[s]he assumed that [Customer X] was masturbating" on the second call. ECF No. 55, PageID.1313. In support of that statement, Rodriguez cited some pages from her deposition testimony. *Id.* (citing ECF No. 55-25, PageID.1515–1516). But those pages do not support Rodriguez's statement. Rodriguez testified that she did not recall Customer X subjecting her "to anything sexually inappropriate" on the second call. ECF No. 55-25, PageID.1516. She admitted that Customer X did not make any sounds on the call that "would lead a reasonable person to conclude that he was masturbating on the phone." *Id.* at PageID.1515. She agreed that he didn't "make a single sexually inappropriate comment" on the call. *Id.* What is more, Rodriguez then disavowed the allegation she made in her amended complaint that Customer X masturbated and made sexually inappropriate comments on the second call. ECF No. 55-25,

PageID.1516.[2] Finally, the recording does not contain heavy breathing. *See* Ex. S – Recording of May 11, 2022 Call.

Even if the second call was not sexual, however, it was still another interaction with Customer X that Rodriguez found disturbing. The same day, soon after the call, Rodriguez messaged Leonard. Rodriguez told Leonard that she was "shaking now after hearing [Customer X's] voice again." ECF No. 55-11, PageID.1400. Leonard responded two minutes later and asked to have a virtual one-on-one meeting with Rodriguez. ECF No. 55-25, PageID.1517. During the meeting, Rodriguez told Leonard that she "was a lot more upset than [she] expected to be hearing his voice the second time and that it was making [her] anxious." *Id.*

### iii.    Call III – January 28, 2023

On January 28, 2023, Rodriguez received a third call from Customer X. He claimed he was calling to pay his bill. During the call, he began breathing heavily. To Rodriguez, it sounded like masturbation. Listening to the recording in the light most favorable to Rodriguez, a reasonable jury could agree that Customer X was

---

[2] Rodriguez's response to DTE's motion for summary judgment includes additional unsupported assertions. First, Rodriguez said that Customer X hung up on the second call after "approximately six minutes." ECF No. 55, PageID.1314. For that proposition, she cited her deposition testimony and a recording of the call. *Id.* But neither supports a six-minute duration. The cited portion of deposition testimony does not mention the duration of the call. *See* ECF No. 55-25, PageID.1516. And the recording of the second call is only 1 minute and 35 seconds. Ex. S – Recording of May 11, 2022 Call. Second, Rodriguez said that "[m]inutes went by" in which Customer X failed to provide the requested information. ECF No. 55, PageID.1313. For that proposition, she cited the recording of the call. *Id.* Again, however, the recording only lasted 1 minute and 35 seconds—not multiple minutes. Thus, Rodriguez failed to support either assertion with record evidence.

masturbating for part of the call. *See* Ex. R – Recording of January 28, 2023 Call. And a reasonable jury could conclude that Customer X's comment, "I almost got it," as well as "I've almost got it. The paper's almost coming," referred to sexual climax. *See id.* at 2:51, 5:43.[3]

Hours after the incident, Rodriguez messaged Leonard. Because this was the third call that Rodriguz received from Customer X, Rodriguez said "this is causing some major PTSD and any time a male voice comes on the line and asks you to wait while they find their account number does this to me." ECF No. 55-16, PageID.1415. Rodriguez ultimately went on a medical leave of absence after receiving the third call. ECF No. 55-19, PageID.1423.

### B.    *Calls to Other DTE Employees from Customer X*

During her time at DTE, Rodriguez learned about several instances of harassment by Customer X against other DTE employees.[4] In April 2022, Leonard told Rodriguez that Customer X's inappropriate behavior "had happened before." ECF No. 55-25, PageID.1507. Leonard said that Customer X "has been calling and been

---

[3] In reply, DTE argued that there were "no sexually charged comments" on the third call. ECF No. 60, PageID.1939. In support of that assertion, DTE cited a portion of Rodriguez's deposition testimony in which she agreed that Customer X did not make a subset of sexually inappropriate comments. ECF No. 47-2, PageID.729. But that does not mean that he did not make *any* sexually charged comments. Moreover, although a reasonable jury could conclude that the comments discussed above were not sexual, they could also conclude the opposite, especially given the odd noises on the recording.

[4] The Court "may consider evidence of other acts of harassment of which a plaintiff becomes aware during the period [of] his or her employment, even if the other acts were directed at others and occurred outside of the plaintiff's presence." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 335 (6th Cir. 2008).

inappropriate with other people before." *Id.* at PageID.1508. Leonard also told Rodriguez that "other people," including a woman named Paige Jenkins, had received a similar call from Customer X. *Id.* at PageID.1510. And another customer service representative named Ci'Aris suggested to Rodriguez that she received a call from Customer X, who she found "disgusting." ECF No. 47-13, PageID.819. She did not provide any further details about the call. *See id.*

Then, in January 2023, a DTE employee suggested that Customer X had previously called other employees, though she had not heard of him calling "in a while." ECF No. 55-25, PageID.1530. And, in February 2023, Rodriguez learned that, after her third call, Customer X immediately "called back and got another customer service representative and that that call was more similar to [the] first call because it took the representative a while to realize what was going on." *Id.*

II.    Procedural Background and Other Motions

Having discussed the relevant factual background, the Court can continue to the procedural background of the case and the instant motions.

After DTE terminated Rodriguez's employment in September 2023, she sought and received a right to sue letter from the Equal Employment Opportunity Commission. ECF No. 10, PageID.43. She then sued DTE for having a sexually hostile work environment in violation of Title VII. ECF No. 1. She later filed an amended complaint that added a claim under Michigan's Elliot-Larsen Civil Rights Act. ECF No. 10, PageID.56.

After the close of discovery, DTE filed the instant motion for summary judgment. ECF No. 47. With the motion fully briefed, the Court held oral argument on December 10, 2025.

Meanwhile, the parties filed several other motions. DTE filed three versions of a motion for a *Daubert* hearing and to exclude opinions and testimony from Rodriguez's expert witness, Dr. Noelle Clark. ECF Nos. 48, 49, 68. Rodriguez asked for leave to file excess pages in her response to the motion for summary judgment. ECF No. 54. And after DTE belatedly produced supplemental discovery one week before oral argument on DTE's motion for summary judgment, Rodriguez moved for leave to file a supplemental response to the motion for summary judgment. ECF No. 66.

According to Rodriguez, the supplemental discovery showed DTE's "knowledge of the calls made by Customer X" that targeted female customer service resolution specialists "to masturbate with them on the phone." ECF No. 66-6, PageID.2110. It also showed DTE's "failure to take effective remedial action" and how that failure affected "the terms and conditions of Rodriguez's employment with DTE." *Id.*

The Court has reviewed the supplemental discovery as part of its assessment of Rodriguez's motion for summary judgment. The supplemental discovery shows that DTE's corporate security was known to be ineffective. *See id.* at PageID.2116 ("they dont do anything!"). It shows that, before Customer X's calls with Rodriguez, DTE supervisor Brianne Kimbrough knew that the company had a problem with a masturbating customer. *See id.* at 2118 ("We got another guy playing with himself

9

while on the line..... smh").[5] It shows that, when Customer X made the first and second calls to Rodriguez, he was already so notorious that Keisha Leonard called him "the creeper." *Id.* at PageID.2120, 2122. And it shows the negative impact of Customer X's calls on Rodriguez. *Id.* at PageID.2124. ("she's really shaken up this time").

Finally, in view of the supplemental discovery, Rodriguez moved for discovery sanctions under Federal Rule of Civil Procedure 37 and asked to re-open discovery. ECF No. 77. And DTE filed a motion in limine. ECF No. 81.

## LEGAL STANDARD

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174

---

[5] At her deposition, Kimbrough said that she did not remember any customer service representative receiving a call from a masturbating customer prior to Rodriguez. ECF No. 55-27, PageID.1609.

(6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When it considers a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

DTE moved for summary judgment on two grounds. ECF No. 47. First, DTE argued that the harassment by Customer X was not severe or pervasive under Title VII or ELCRA. *Id.* at PageID.662–667.[6] Second, DTE argued that Rodriguez cannot impose liability on the company for the actions of Customer X, a non-employee. *Id.* at PageID.667–672. Because the Court agrees with DTE's first argument for summary judgment, it does not reach the second argument.

The discussion will proceed in three parts. First, the Court will explain why the motion for summary judgment must be granted. Second, the Court will explain why the motions to reopen discovery and for sanctions should be denied as not pertinent to DTE's first argument for summary judgment. Finally, the Court will address the remaining motions.

---

[6] The analysis for hostile work environment claims under Title VII and ELCRA is the same. *See Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 564 (6th Cir. 2021) (citing *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 468 (6th Cir. 2012)).

I.      Motion for Summary Judgment [47]

To be actionable under Title VII, sexual harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 564 (6th Cir. 2021) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)); *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (emphasizing that "'severe or pervasive' is properly considered in the disjunctive"). The requirement "has a subjective prong and an objective prong." *Nathan*, 992 F.3d at 568. Here, DTE contested Rodriguez's showing on just the objective prong.

In assessing whether harassment is objectively severe or pervasive, Courts examine the totality of the circumstances. That includes "the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 568 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). An employee's psychological well-being is also relevant. *See Harris*, 510 U.S. at 23. Under the totality-of-the-circumstances test, "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 468–69 (6th Cir. 2009) (quoting *Williams v. Gen. Motors Corp.,* 187 F.3d 553, 562 (6th Cir. 1999)).

12

In addition, the Court "may consider evidence of other acts of harassment of which a plaintiff becomes aware during the period [of] his or her employment, even if the other acts were directed at others and occurred outside of the plaintiff's presence." *Hawkins*, 517 F.3d at 335. But "comments or conduct of which a plaintiff had no knowledge cannot be said to have made her work environment hostile." *Barrett*, 556 F.3d at 515. The weight given to other acts will vary based on the facts. *Hawkins*, 517 F.3d at 336. Factfinders can consider "whether the similar acts have been clearly established or are mere conjecture, and the proximity in time of the similar acts to the harassment alleged by the plaintiff." *Id.*

Here, no reasonable jury could find that Defendant's work environment at DTE was objectively hostile. To explain why, the Court will begin with a discussion of Sixth Circuit caselaw on Title VII hostile work environment claims. Then, the Court will continue to the totality of the circumstances surrounding Rodriguez's employment. Finally, the Court will address Rodriguez's counterarguments.

### A.    *Severe or Pervasive*

It is a high bar for what qualifies as objectively severe or pervasive. For example, in *Bowman v. Shawnee State University*, a female supervisor grabbed a male employee's buttocks at a Christmas party and said that she "controlled [his] ass and she would do whatever she wanted with it." 220 F.3d 456, 459 (6th Cir. 2000). On three other occasions, the same supervisor rubbed the employee's shoulder, put her hands on him, and told him to come back to her house for some one-on-one time in her pool. *Id.* Notwithstanding the seriousness of the allegations, the Sixth Circuit

13

held that the harassment was neither severe nor pervasive under Title VII. *Id.* at 464.

*Bowman* "may set the outer limits on what conduct a reasonable person could not believe creates a hostile work environment." *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 569 (6th Cir. 2021). But other Sixth Circuit cases confirm that the severe or pervasive requirement is a demanding one.

In *Burnett v. Tyco Corp.*, on different occasions, a male manager placed a pack of cigarettes inside a female employee's tank top and brassiere strap, referred to the employee losing her "cherry," and sang her a sexualized Christmas carol. 203 F.3d 980, 981 (6th Cir. 2000). Not severe or pervasive. *Id.* at 985.

In *Clark v. United Parcel Services, Inc.*, a male supervisor placed his vibrating pager against a female employee's upper thigh on two occasions and asked her if it "felt good." Another time, he asked what she was wearing for undergarments. When she said she was wearing a thong, he grabbed her overalls to peek down them. He also told sexual jokes in front of her and others. 400 F.3d 341, 344–345 (6th Cir. 2005). Not severe or pervasive. *Id.* at 352.

In *Nathan v. Great Lakes Water Authority*, supervisors and co-workers made multiple derogatory comments about a female employee's breasts—saying she "needed a more supportive bra," her "breasts looked like they were drooping," her "breasts were so big, it looked like [she] could trip over them," her breasts looked "sloppy"—and called her a "bitch." 992 F.3d at 565. Not severe or pervasive. *Id.* at 568.

14

District courts apply the same demanding test. Take the case of a female customer service representative, LaTisha Breedon, who brought a hostile work environment claim against her employer. Multiple male customers sexually harassed her. On two occasions, the same man masturbated on the phone. Breedon asked to be removed from future calls with him, but her employer said that "she must continue accepting calls, even from masturbating customers." *Breeden v. Frank Brunckhorst Co., LLC*, No. 2:19-cv-5515, 2020 WL 3574685, at *3 (S.D. Ohio July 1, 2020). Another purveyor continually joked on the phone about Breedon getting naked. *Id.* at *2. And another asked Breedon about her co-worker's breasts. *Id.* at *5. Not severe or pervasive. *Id.* at *6.

Though there is no mathematical equation for when conduct becomes severe or pervasive, these cases show that even unacceptable and immoral conduct may not suffice under Title VII.

### B.      *Totality of the Circumstances*

In examining the totality of the circumstances, the Court looks to the *Harris* factors. *See Harris*, 510 U.S. at 23. Together, the factors weigh against a finding that the harassment was objectively severe or pervasive.

Start with the frequency of the harassment. At most, Rodriguez endured two sexually harassing calls from Customer X over the approximately seventeen months that she worked at DTE. *See* ECF No. 55-25, PageID.1533. About three of those months were training, and Rodriguez worked only a few days in September 2021. *Id.* at PageID.1471,1488, 1533. Rounding down, that comes to about thirteen months of

15

non-training time on the job. During the time, Rodriguez took between 20–30 calls per day. *Id.* at PageID.1533. That equates to 100–150 calls per work week. Assuming 50 work weeks in a year, plus 4 more weeks for the thirteenth month, that comes to approximately 5,400 to 8,100 calls over thirteen months of work.[7] Regardless of the exact number, it is clear Defendant took thousands of calls during her employment. But only two of the calls were sexually harassing. Thus, the sexual harassment that Rodriguez endured from Customer X was infrequent.

Even though the infrequency of the harassment weighs against Rodriguez, there is evidence that the harassment interfered with her employment and disturbed her psychologically. After all, Rodrigeuz ultimately went on a medical leave of absence after receiving the third call from Customer X. ECF No. 55-19, PageID.1423. She told DTE that she had an "emotional disability" from the calls. *Id.* Psychological well-being/interference with work performance weighs in favor of Rodriguez.

Next, the Court must analyze the severity of the harassment. In assessing severity, the Court will also examine the nature of the harassment—*i.e.*, "whether it is physically threatening or humiliating, or a mere offensive utterance." *Harris*, 510

---

[7] DTE's motion calculated approximately 7,800 calls over thirteen months. ECF No. 47, PageID.665. DTE used the thirty-calls-a-day number even though Rodriguez later clarified that she received "between 20 and 30" calls per day. ECF No. 55-25, PageID.1533. Neither Rodriguez nor DTE included the three-month training period in their calculations because, during that time, the number of calls that Rodriguez received would not have been as high each day, and Rodriguez does not appear to have testified to the number of calls that she received per day during her training period. *See id.* In any event, the 5,400–8,100 range provides a more accurate approximation of the number of calls that Rodriguez received during the fourteen months that she worked at DTE.

U.S. at 23. Here, Customer X did not physically touch Rodriguez; he was never in the same room as Rodriguez. And he did not have an audience. Nor did DTE's policy force Rodriguez to stay on the phone and endure harassment from Customer X for an extended period of time. It was possible to escalate a "verbally abusive" call to a supervisor and put the call on hold. Rather than follow DTE's policy, however, Rodriguez did not try to contact any supervisors during the calls with Customer X or seek to put him on hold.

The non-physical nature of the harassment is also important. Courts have rejected attempts to analogize telephonic masturbation to sexual assault. *See, e.g.*, *Breeden*, 2020 WL 3574685, at *5 (finding that phone masturbation "does not parallel sexual assault"). That does not excuse Customer's X's harassment in any way. But even sexually charged touching can fail to qualify as objectively severe. As noted above, in *Bowman*, the plaintiff's supervisor touched him in a sexually charged way on three occasions. *See* 220 F.3d at 458–59. In *Clark*, a male supervisor twice placed his vibrating pager against a female employee's upper thigh and asked her if it "felt good"—not to mention grabbing her clothes to peer down at her underwear. *See* 400 F.3d at 344–345. In both cases, even combined with other inappropriate comments from the harasser, the Sixth Circuit held that the harassment was objectively not severe or pervasive. Rodriguez, on the other hand, did not endure anything physical.

Simply put, the Supreme Court has held that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

17

And the non-physical, one-on-one harassment in the instant case is just not as severe as *Bowman* or *Clark*.

Of course, daily or weekly harassment would require a different outcome. Rodriguez cited testimony from Keisha Schaffner that Customer X may have made "well over a hundred calls" across an undefined period of time. ECF No. 55-33, PageID.1799. But Rodriguez did not provide evidence that she discovered the full scope of Customer X's calling while she was employed at DTE. And "comments or conduct of which a plaintiff had no knowledge cannot be said to have made her work environment hostile." *Barrett*, 556 F.3d at 515. Indeed, other acts of harassment *are irrelevant* if "there is no evidence that plaintiff was aware of [the] actions at the time." *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 249 n.4 (6th Cir. 1998).

That said, Rodriguez did learn about some additional harassment by Customer X during her employment at DTE. But it was limited to the following: Customer X had called before and been inappropriate with "other people," including Paige Jenkins and a woman named Ci'Aris.[8] And after the third call, Customer X called back and harassed another customer service resolution specialist. ECF No. 55-25, PageID.1530. Thus, although Rodriguez was aware that Customer X had called others and been inappropriate, she did not become aware of any specifics during her employment at DTE.

---

[8] Jenkins spoke with Customer X in December 2020, ECF No. 66-6, PageID.2116, many months before Customer X's first call to Rodriguez in April 2022.

Although the other calls involving Customer X help Rodriguez, they do not significantly change the analysis. To be sure, other acts by serial harassers are given "more weight" in the severe or pervasive analysis. *See Hawkins*, 517 F.3d at 337. Because of the multiple instances of harassment, Customer X qualifies as a serial harasser. DTE's inability to stop him could leave "the impression that acts of harassment are tolerated at the workplace and support[] a plaintiff's claim that the workplace is both objectively and subjectively hostile." *Id.* Here, the serial nature of the harassment, which impacted Rodriguez, Jenkins, Ci'Aris, and a fourth woman, weighs in favor of making the harassment severe or pervasive.

But the other-acts evidence is thin gruel. During her employment at DTE, nobody explicitly told Rodriguez that Customer X had masturbated with other employees over the phone. *See* ECF No. 47-2, PageID.711–714. And apart from some Teams messages with Ci'Aris, Rodriguez did not hear about any of the harassment firsthand. Details were scant. The vague secondhand reports lent themselves to conjecture, thus taking away from any weight they might have. *See Hawkins*, 517 F.3d at 336.

Compare the evidence to the facts in *Hawkins*. There, the Sixth Circuit found that other-act evidence from a serial harasser, in conjunction with direct harassment, presented a genuine issue of material fact on whether a workplace was hostile. *Id.* at 338. But *Hawkins* involved "continual" harassment by a serial harasser that included "touching and unwelcome physical contact." *Id.* at 334. In *Hawkins*, the harasser "repeatedly made crude requests for oral sex, solicited a sexual relationship, and

invaded [a female coworker's] physical space by rubbing her, touching her, and trying to 'feel on her.'" *Id.*

Here, by contrast, the five relevant calls from Customer X (two to Rodriguez and three known instances to her coworkers) cannot be described as continual, and Customer X never invaded Rodriguez's physical space or the space of any of her coworkers. Thus, even if the serial nature of Customer X's calls weighs in Rodriguez's favor, the calls do not change the fact that the harassment was not severe or pervasive.

Rodriguez advanced several counterarguments. None, however, are persuasive. *First*, Rodriguez argued that DTE's reporting of Customer X to the police makes it more likely that the conduct was objectively severe. ECF No. 55, PageID.1329. Perhaps the calls were criminal. But the fact that conduct is criminal does not prove that a work environment is hostile. Again, on multiple occasions, the Sixth Circuit has held that intentional, non-consensual, and offensive physical contact does not suffice to create a hostile work environment—even though such conduct almost certainly qualifies as battery. *See, e.g.*, *Clark*, 400 F.3d at 344–345. Thus, even if Customer X's actions could qualify as criminal, and even though the conduct was reported, those facts are not dispositive here.

*Second*, Rodriguez argued that DTE's subsequent changes to internal company policy, which mention Customer X's "trademark behaviors," show that the harassment was objectively severe and pervasive. ECF No. 55, PageID.1329. But Federal Rule of Evidence 407 bars the admission of subsequent remedial measures

20

to prove "culpable conduct." And even if the changes are admissible, DTE may have wanted to better protect its employees from harassment that fell short of a Title VII violation. The change itself does not prove that the harassment was severe or pervasive.

*Finally*, Rodriguez argued that DTE incorrectly narrowed the relevant conduct to the first call in April 2022 and the third call in January 2023. ECF No. 55, PageID.1329–1330. The Court agrees that it must look beyond the two calls. For example, the other incidents of harassment that Rodriguez learned about during her employment are relevant to whether the harassment at DTE was severe or pervasive. That said, for the reasons above, Rodriguez presented no evidence that she was sexually harassed on the second call in May 2022.

Thus, the evidence shows that Rodriguez endured only sporadic, private, and non-physical harassment that is insufficiently severe or pervasive to give rise to a hostile work environment claim. Accordingly, the Court must grant Defendants' motion for summary judgment.

II.     Motion to Re-Open Discovery and for Sanctions [77]

Next, Rodriguez moved to re-open discovery and for sanctions under Federal Rule of Civil Procedure 37. ECF No. 77. Because Rodriguez did not seek additional discovery that would be pertinent to whether the harassment that she experienced or knew about was objectively severe or hostile under Title VII, the Court will deny the request to reopen discovery. And because any discovery missteps were harmless, the Court will also deny the motion for sanctions.

21

A.      *Request to Reopen Discovery*

The Court starts with the request to reopen discovery. District courts have substantial discretion over discovery. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018). A request to reopen discovery, filed after the discovery cut-off, falls under Federal Rule of Civil Procedure 6(b). *See Allen v. Cam's Transp. Co.*, No. 3:22-cv-403, 2024 WL 3852133, at *3 (E.D. Tenn. Aug. 16, 2024). Rule 6(b) requires both good cause and excusable neglect. *See id.* Here, the discovery period ended on August 15, 2025. ECF No. 39, PageID.601. Because the requested discovery is not pertinent to the decisive issue in the case—whether the harassment was objectively severe or pervasive—the Court finds that Rodriguez cannot show good cause to reopen discovery. To explain why, the Court will detail the sequence of events that led to the motion to reopen discovery.

The motion came on the heels of DTE's supplemental production on December 4, 2025. *See* ECF No. 77, PageID.2571. A week later, Rodriguez submitted a supplemental response in opposition to DTE's motion for summary judgment. ECF No. 66-6. That response included a handful of exhibits from the supplemental production. *Id.* at PageID.2115–2124. The exhibits underscore what DTE knew about Customer X and when. *See* ECF No. 66-6, PageID.2116 (discussion from December 2020 about Customer X), *id.* at PageID.2118 ("We got another guy playing with himself while on the line….. smh"), *id.* at PageID.2120 ("OMG! the creeper is back at it"); *id.* at PageID.2122 ("the creeper is calling again . . . he just got off the line with Angela again . . . she is so shaken up"). The exhibits also expose Kimbrough's all-too-

22

convenient memory lapse on being told that Customer X was masturbating over the phone with customer service representatives. *See* ECF No. 55-27, PageID.1609. In truth, by February 2021, Kimbrough knew that someone—almost certainly Customer X—was calling and masturbating over the phone. ECF No. 66-6, PageID.2118. Because the Court is granting Rodriguez's motion for leave to file a supplemental response, ECF No. 66, it considered the above information for purposes of the motion for summary judgment.

After submitting her supplemental brief, Rodriguez also asked to re-open discovery. ECF No. 77. She wants to depose three individuals who sent the messages in the supplemental production: Kimbrough, Leonard,[9] and Trevor Cousineau. *Id.* at PageID.2572. Rodriguez already conducted extensive depositions of Kimbrough and Leonard. *See* ECF Nos. 47-8, 47-12. In addition, Rodrigeuz wants discovery regarding unnamed "other witnesses" who she says were "previously undisclosed." ECF No. 77, PageID.2572, 2578. They appear to be DTE employees who received a seven-word message ("OMG! the creeper is back at it") in April 2022. *See* ECF No. 66-6, PageID.2120. Rodriguez wants the chance to confront Kimbrough and Leonard in cross-examination with contradictory and conflicting statements from the new exhibits. ECF No. 79, PageID.2746–2747. Meanwhile, the fact that others received the messages is relevant to what DTE knew about Customer X.

---

[9] The Court uses the last name "Leonard" because that was her name at the time of the events in the case. *See* ECF No. 77, PageID.2572.

The problem for Rodriguez is that accumulating the requested discovery would not make the harassment any more severe or pervasive. Sure, the discovery could be relevant to other issues. For instance, it could be relevant to the fifth element of a hostile work environment claim—whether "the defendant knew or should have known about the harassment and failed to act." *Nathan*, 992 F.3d at 565 (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013)). But it is undisputed that DTE knew about Customer X. And, in any event, the Court decided the motion for summary judgment based on the *fourth* element of a hostile work environment claim—whether "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Id.* (quoting *Waldo*, 726 F.3d at 813). Although Rodriguez wants to reopen discovery to ask questions of various individuals, the individuals have no personal knowledge of Customer X's harassment of Rodriguez. Nor do they have personal knowledge of other harassment caused by Customer X that Rodriguez learned about during her employment. The key witness on these issues is Rodriguez—not anyone else.

The discovery could also be relevant to DTE's second ground for summary judgment—whether Rodriguez can impose liability on DTE for the actions of a non-employee. Third-party liability hinges on whether DTE "desired to cause [Rodriguez's] harassment or was substantially certain that it would result from its actions." *Bivens v. Zep, Inc.*, 147 F.4th 635, 645 (6th Cir. 2025) (citation modified). Rodriguez wants more evidence to show that DTE knew about Customer X, that they knew he was a problem, and that they would have been "substantially certain" that

24

he would keep harassing female employees. But the Court declined to reach DTE's second argument for summary judgment—because the conduct was not severe or pervasive. Thus, the evidence is once again relevant to a non-dispositive issue.

Rodriguez did not argue that the additional discovery was relevant to whether the harassment was severe or pervasive. Rather, she argued that the discovery would be relevant to the non-dispositive issues discussed above: (1) "whether Defendants had notice of the sexual harassment and failed to take prompt and appropriate remedial action to stop it" and (2) "whether [Customer X's] sexual harassment was substantially certain to occur." ECF No. 79, PageID.2749. Further evidence on those issues would not change the outcome of the motion for summary judgment. As a result, the Court finds that there is not good cause to reopen discovery.

### B.      Request for Sanctions

Rodriguez also asked for sanctions for DTE's nondisclosure. But the nondisclosure was harmless: either way, the Court was going to grant summary judgment. And a party that violates Rule 26 can avoid sanction when "there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (quoting *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.,* 596 F.3d 357, 370 (6th Cir. 2010)). Thus, even assuming DTE violated Rule 26 by not providing the supplemental discovery sooner, the Court will not impose sanctions because the mistake was harmless.

III.     Remaining Motions

Finally, the Court will address the outstanding motions. Rodriguez's motion for leave to file excess pages in opposition to DTE's motion for summary judgment is granted. ECF No. 54. Next, as discussed above, Rodriguez's motion for leave to file a supplemental response to the motion for summary judgment is granted. ECF No. 66. The Court considered the supplemental response and the attached exhibits in the above analysis. Finally, having granted the motion for summary judgment, the Court will deny DTE's *Daubert* motions and motion in limine as moot. ECF Nos. 48, 49, 68, 81.

<strong>ORDER</strong>

**WHEREFORE**, it is hereby **ORDERED** that the motion for summary judgment [47] is **GRANTED**.

**IT IS FURTHER ORDERED** that the motions for a *Daubert* hearing and to exclude opinions and testimony of Dr. Karen Noelle Clark [48, 49, 68] are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the motion for leave to file excess pages [54] is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion for leave to file a supplemental response [66] is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion to reopen discovery and for sanctions [77] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion in limine [81] is **DENIED AS MOOT**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: February 6, 2026